939 A.2d 273

**HSP GAMING, L.P., Petitioner,**

**v.**

**CITY COUNCIL FOR the CITY OF PHILADELPHIA, The City of Philadelphia and The City Planning Commission for the City of Philadelphia, Respondents.**

Supreme Court of Pennsylvania.

Dec. 3, 2007.

Reargument Denied Dec. 31, 2007.

510

West Codenotes

**Prior Version Recognized as Unconstitutional**

4 Pa.C.S.A. § 1506.

---

Jennifer M. McHugh, Esq., Richard A. Sprague, Esq., F. Warren Jacoby, Esq., Charles J. Hardy, Esq., Thomas A. Sprague, Esq., Stephen A. Cozen, Esq., Philadelphia, William H. Lamb, Esq., Scot Russel Withers, Esq., West Chester, for HSP Gaming, L.P., Petitioner.

Brian Charles Vance, Esq., James W. Christie, III, Esq., Kevin Michael Greenberg, Esq., Abbe F. Fletman, Esq., Romulo Liberio Diaz, Jr., Esq., John Gregory Koch, Esq., Rachel Sydney Wolfe, Esq., Philadelphia, for City of Philadelphia.

Christopher B. Craig, Esq., Harrisburg, for amicus curiae Senator Vincent J. Fumo.

CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

PER CURIAM.

On February 1, 2007, the Pennsylvania Gaming Control Board issued an Adjudication and Order approving applications for two Category 2 slot machine licenses in the City of Philadelphia for HSP Gaming, L.P. (HSP/SugarHouse) and Philadelphia Entertainment and Development Partners, L.P. (PEDP/Foxwoods), pursuant to the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. § 1101 et seq. The Gaming Board denied the applications for licensure submitted by Keystone Redevelopment Partners, PNK Pinnacle Entertainment (Pinnacle), and Riverwalk Casino,

L.P. Riverwalk Casino filed an appeal to this Court pursuant to 4 Pa.C.S. § 1204.[1] On July 17, 2007, the Gaming Board's Adjudication and Order was affirmed by this Court. *Riverwalk Casino v. Pa. Gaming Control Bd.*, 592 Pa. 505, 926 A.2d 926 (2007).

In anticipation of the award by the Gaming Board of casino licenses in the City of Philadelphia, City Council had enacted Ordinance No. 051028–AA on February 23, 2006, adding Chapter 14–400 to the provisions of the Philadelphia Code that govern zoning and planning.[2] The Ordinance created a new zoning classification referred to as Commercial Entertainment Districts (CEDs). The CED ordinance was "intended to encourage the orderly development of major entertainment facilities and certain other uses in accordance with an approved plan of development," without interfering with the Gaming Board's approved locations of the casinos. Phila. Code § 14–401(1).

> Specifically, the provisions of the Philadelphia Code state:
> (1) Nothing in this Chapter shall limit the right of the Pennsylvania Gaming Control Board under the [Gaming] Act to identify the property on which it will permit a Category 2 licensed gaming facility within the City.
> (2) Nothing in this Chapter shall be construed to prohibit any use that is exclusively regulated and permitted by the Commonwealth under the [Gaming] Act.

Phila.Code § 14–405(2), (3).

Section 14–403 of the CED Ordinance sets forth the procedures for the establishment of a Commercial Entertainment District. Under the CED Ordinance, a plan of development is submitted to the Philadelphia Planning Commission for approval. After a plan of development is approved by the

1. Keystone Redevelopment Partners and PNK Pinnacle Entertainment did not file appeals from the Board's Order and Adjudication.

2. The CED ordinance was amended on November 29, 2006, by adding requirements for transportation and parking management plans, provisions for temporary structures, additional permitted uses, long-term maintenance plans, and additional signage controls. *See* Exhibit G to Petition for Review.

Planning Commission, it is submitted to Council. Council is to take two separate actions to designate a site for casino development: (1) designate by ordinance the site as a Commercial Entertainment District, and (2) review and approve a Plan of Development that has been submitted by the Planning Commission. Phila. Code § 14–403(1), (2). Once the CED designation becomes effective, the underlying zoning classifications for all lots within the district are superseded. Phila. Code § 14–403(1).

On March 26, 2007, HSP submitted a proposed Plan of Development to the Planning Commission. On May 22, 2007, the Planning Commission held a public hearing and approved HSP's Plan of Development. The Planning Commission recommended the approval of three bills related to HSP, which would (1) amend zoning for HSP's gaming site and zone the property as a CED District, (2) approve HSP's Plan of Development, and (3) authorize the revision of the lines and grades on HSP's site and provide a right of way for sewer maintenance. On May 24, 2007, the bills were introduced before City Council; however, the bills were not acted upon by City Council.

On October 25, 2007, HSP filed this Petition for Review against Respondents City Council for the City of Philadelphia, the City of Philadelphia, and the City Planning Commission for the City of Philadelphia. HSP also filed an Application for Summary Relief and Expedited Briefing Schedule.

HSP requests that this Court issue an order directing Respondents to comply with their statutory duties to implement the decision of the Gaming Board to locate a Category 2 casino at HSP's site in Philadelphia as selected and approved by the Gaming Board.[3] HSP asserts that City Council has

3. In Paragraph 78 of its Adjudication, the Gaming Board described HSP's proposed site as "a currently vacant, underutilized former industrial property. The majority of the site has been vacant since 1980 and was previously used by the Jack Frost Sugar Company as a sugar refinery, packaging and distribution center. All buildings on the site have been demolished and removed." *See* Exhibit A to Petition for Review. HSP's facility will be known as the "SugarHouse Casino."

refused and failed to act on three bills that were properly introduced to City Council on May 24, 2007, and is thereby obstructing the process established in the Philadelphia Code, §§ 14–401 et seq., for developing gaming facilities.

HSP further requests that a master be appointed pursuant to Section 1506 of the Gaming Act, 4 Pa.C.S. § 1506. HSP contends that there are no material factual issues in dispute with respect to the inaction and obstruction by Council, but requests that a master be appointed with continuing jurisdiction of these matters pursuant to § 1506.

■■■ On November 2, 2007, a Brief of Respondents was filed on behalf of the City of Philadelphia and the City Planning Commission (the City). The City does not have any objection to HSP's request for relief.[4] Specifically, the City states in its Brief that it does not oppose the following relief:

(1) that the site approved by the Gaming Board for the SugarHouse Casino be declared zoned as a Commercial Entertainment District pursuant to the Philadelphia Code Chapter 14–400 as in existence on November 1, 2007;

(2) pursuant to Chapter 14–400, HSP's Plan of Development as approved on May 22, 2007 by the Planning Commission, including all provisos thereto, be declared to be

In Paragraph 81 of its Adjudication, the Gaming Board stated that, " [a] portion of the proposed site is located in a C–3 district, but the majority of the site is zoned G–2 Heavy Industrial. As a result, the site has multiple zoning classifications with the C–3 use reasonably analogous to the sought gaming use. The City of Philadelphia has adopted an ordinance that has created a 'Commercial Entertainment District' which, among other things, permits licensed gaming facilities. To date, the City has not indicated which areas will be designated as Commercial Entertainment Districts as it is waiting to see which applicants are licensed by the [Gaming Board]." *Id.*

4. The City states that the Planning Commission cannot be sued as a separate entity in HSP's Petition for Review because City agencies must be sued only in the name of the City and should be stricken as a party to this case, citing 53 P.S. § 16257 and *City of Phila. v. Glim*, 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (1992) ("all suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence"). For this reason, the Planning Commission shall be stricken as a party to this matter.

finally approved and shall require no further approval as if City Council had approved the same;

(3) that all revisions, relocations, strikes and vacations of easements and public rights of way identified in the Plan of Development as approved by the City Planning Commission are authorized; and

(4) that the City shall take all actions necessary to implement the relief granted, including making all necessary changes to City records, maps and plans, and receiving, reviewing and acting upon all applications from HSP in the ordinary course and in compliance with the Court's order.

The City requests this Court to consider HSP's Petition for Review on an expedited schedule based upon the filings and briefs that have already been submitted. The City asserts that all relevant legal issues have been briefed in full and there are no material issues of fact in dispute. The City contends that neither additional briefing nor argument are necessary for that reason.

On November 2, 2007, City Council (Council) filed a "Consolidated Motion to Dismiss by City Council for the City of Philadelphia in Opposition to Petition for Review and in Opposition to Application for Summary Relief, Including Preliminary Objections to Both the Petition and the Application." [5] An Amicus Curiae Brief in Opposition to the Petition

5. Although Council has styled its Motion to Dismiss as including preliminary objections to HSP's Petition for Review and Application for Summary Relief, Council has not presented "preliminary objections" apart from its general argument or identified specific preliminary objections that it purports to raise. Based upon its request for relief, however, it appears that Council asserts that it is entitled to dismissal of HSP's Petition as a matter of law. Whether styled as preliminary objections or as an Application for Summary Relief under Pa.R.A.P. 1532(b), Council asserts that this Court lacks jurisdiction over this matter under the Gaming Act, and that HSP is not entitled to relief because HSP's petition is premature as no action has been taken on the bills by Council.

Council also claims that HSP is not entitled to summary relief because there are issues of material fact in dispute, including matters involving riparian rights. Alternatively, Council contends that HSP's petition for expedited disposition and summary relief should be dismissed to allow for the development of a full factual record.

for Review has been filed by State Senator Vincent J. Fumo. Both Council and Amicus request that we dismiss HSP's Petition for Review and Application for Summary Relief and Expedited Briefing Schedule.[6]

HSP has filed a Brief in Opposition to the Consolidated Motion to Dismiss. The City responds that it believes that its original brief adequately addresses the issues raised in Council's motion to dismiss and renews its request for an expeditious resolution of the underlying dispute.

We agree with the City that the briefs submitted by the parties and by Amicus have provided all of the argument required for this Court to consider and address the issues that have been raised. We accept the matter for consideration and disposition on the briefs submitted by the parties and Amicus.

## I. JURISDICTION

### Section 1506 of the Gaming Act, 4 Pa.C.S. § 1506

The threshold question to be addressed is whether this Court has jurisdiction over this matter pursuant to Section 1506 of the Gaming Act, 4 Pa.C.S. § 1506. Section 1506 provides:

> In order to facilitate timely implementation of casino gaming as provided in this part, notwithstanding 42 Pa.C.S. § 933(a)(2) (relating to appeals from government agencies), the Supreme Court of Pennsylvania is vested with exclusive appellate jurisdiction to consider appeals of a final order, determination or decision of a political subdivision or local instrumentality involving zoning, usage, layout, construction or occupancy, including location, size, bulk and use of a licensed facility. The court, as appropriate, may appoint a master to hear an appeal under this section.

HSP contends that City Council's refusal to enact the HSP bills represents the final determination and decision of a

6. Since Council and Amicus have taken similar positions with respect to the issues raised by HSP, their arguments will be addressed herein as one.

political subdivision that involves the zoning, usage, and location of a licensed gaming facility within the scope of § 1506.

The City notes that in a brief previously filed with this Court in *Philadelphia Entertainment and Development Partners, L.P. v. City of Philadelphia*, 594 Pa. 468, 937 A.2d 385 (2007)[7], the City had conceded that if a gaming operator with

7. On November 20, 2007, an opinion was filed by this Court in *Philadelphia Entertainment and Development Partners L.P. v. City of Philadelphia*, 594 Pa. 468, 937 A.2d 385 (2007). The decision is not applicable to HSP's Petition for Review as the issues presented to the Court in *Philadelphia Entertainment* did not involve the refusal to act by City Council of an approved Plan of Development under Chapter 14–400 of the Philadelphia Code.

PEDP had applied in 2005 for a Category 2 slot machine license and proposed to locate a licensed facility on its property in Philadelphia. On the date PEDP had applied for the license, its property was zoned as C–3 Commercial under the Philadelphia Code, § 14–304. A C–3 Commercial designation permitted several commercial uses.

On December 20, 2006, the Gaming Board approved the license for PEDP, including the location of the licensed facility that PEDP proposed to establish on its property. On January 23, 2007, PEDP filed an application with the City's Department of Licenses and Inspections for a zoning and use registration permit ("C–3 Permit") under the property's C–3 Commercial designation. PEDP requested the permit for construction of a new hotel with accessory facilities and, inter alia, an "amusement arcade within LCB licensed areas allowed in C–3 commercial." PEDP later requested that the application be amended to seek construction of an "amusement arcade within state licensed areas regulated either by the Pennsylvania Liquor Control Board or the Pennsylvania Gaming Board...."

PEDP's request for a permit on January 23, 2007 was made pursuant to the zoning provisions relating to C–3 Commercial uses, and not under Chapter 14–400 of the Philadelphia Code establishing "Commercial Entertainment Districts" for the development of licensed gaming facilities. It was not until April 17, 2007 that PEDP also commenced proceedings under the framework established in Chapter 14–400 of the Code.

PEDP filed an Emergency Petition for Review with this Court. In Count I of the petition, PEDP challenged the constitutionality of an ordinance changing the zoning designation of its property from commercial to residential. In Count II, PEDP sought a writ of mandamus to compel the City to issue a C–3 zoning and use registration permit or, alternatively a CED zoning and use registration permit. We concluded that the constitutional claim was not ripe for adjudication, and that the allegations contained in the second count of PEDP's petition did not place a final order or determination or decision of a political subdivision within the meaning of § 1506 before this Court.

Unlike the instant case filed by HSP, PEDP did not allege that City Council had refused to act after the Planning Commission had ap-

518

an approved site submitted a development plan that was approved by the Planning Commission and Council simply refused to approve the plan, there might be a role for this Court as the City ultimately has no discretion to preclude gaming. The City asserts that "[f]or the SugarHouse Casino, the time is now." Brief of City of Philadelphia at 3.

The City of Philadelphia acknowledges the efforts of HSP, stating:

> For almost a year, SugarHouse has worked collaboratively with the City to craft a development proposal that addresses every issue the City has identified to address the profound and cityscape-altering impacts of gaming. These issues include transportation, public safety, community reinvestment, economic opportunity, design quality waterfront access, environmental issues, and local taxes. SugarHouse has been forthcoming with its plans and has adjusted them to address the City's concerns with storm-water run-off, design transportation, waterfront access, and the scores of other issues that must be addressed to assure the successful introduction of gaming into the nation's fifth largest city.

*Id.*

The City recognizes that the Gaming Board has exclusive authority to choose the location of slot machine facilities in Pennsylvania under the Gaming Act. The City observes that "[t]he locations of the proposed casinos were, particularly in Philadelphia, a central concern of the [Gaming Board] and was, according to the licensing decision, a critical factor in the determination of which licenses to award." Brief of City at 4. The City asserts that its powers "do not extend to overturning the decisions of the [Gaming Board], either through action or inaction, but only to regulate the development through its valid zoning authority once the Board has located the Philadelphia casinos." *Id.* at 4–5.

proved a Plan of Development under Chapter 14–400 of the Philadelphia Code. As there was no allegation in PEDP's petition of deliberate inaction by City Council following the submission of a plan of development that was approved by the Planning Commission under Chapter 14–400, the issues now presented by HSP were not addressed in *Philadelphia Entertainment.*

Council asserts that this Court does not have jurisdiction over this matter under § 1506 because Council has not issued a final order or made a final determination or decision regarding HSP. Council contends that HSP wrongly argues that its refusal to act is a final determination and decision. Council argues that HSP blatantly misrepresents the record with respect to the legislative process and is attempting to circumvent the process in its entirety. Council claims that if the General Assembly had intended that delay or inaction would have satisfied the requirement of a decision or determination, the General Assembly would have so stated.

In *Pennsylvania Gaming Control Board v. City Council,* 928 A.2d 1255 (Pa.2007), we interpreted § 1506 to determine whether this Court had jurisdiction to consider a claim regarding an ordinance enacted by City Council. Applying the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1501 et seq., we concluded that by its terms, § 1506 created an appeal that may be taken from certain local actions, and that the ordinance was appealable under § 1506 because it was "a final order, determination or decision of a political subdivision" involving the "location of a licensed facility." *Id.* at 1264.

Our conclusion was guided by the words in § 1506, as defined by their common usage, and their plain meaning; and the General Assembly's express instruction in § 1506 to interpret the statute to facilitate the timely implementation of gaming. We observed that:

> Under the SCA, it is fundamental that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,] and that [e]very statute shall be construed, if possible, to give effect to all of its provisions." 1 Pa.C.S. § 1921(a). In this regard, the SCA instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When, however, the words of a statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language. 1 Pa.C.S. § 1921(c).

The SCA provides that "[w]ords and phrases shall be construed according the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). If the General Assembly defines words that are used in a statute, those definitions are binding. *Commonwealth v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989). Under the SCA, a court may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; does not intend to violate the Constitution of the United States or that of Pennsylvania; and intends the entire statute to be certain and effective. 1 Pa.C.S. § 1922(1)-(3).

\* \* \* \*

Initially, § 1506 provides this Court with two instructions. In interpreting the statute, we are to remain mindful that § 1506 aims "to facilitate timely implementation of casino gaming," and that 42 Pa.C.S. § 933(a)(2) of the Judicial Code is set aside and has no significance in this context. \* \* \*

Section 1506 then describes the jurisdiction it vests in this Court. Our jurisdiction is " 'exclusive' and 'appellate' and authorizes us 'to consider appeals of a final order, determination or decision of a political subdivision of local instrumentality involving . . . [the] location of a licensed facility.' " 4 Pa.C.S. § 1506. The SCA defines a " 'political subdivision' as '[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district.' " 1 Pa.C.S. § 1991. The dictionary defines a " 'determination' as 'the act of coming to a decision or of fixing or settling a purpose[,]' and a 'decision' as the act or process of deciding; determination, as of a question or doubt, by making a judgment[;] the act or need for making up one's mind[;] something that is decided; resolution." The Random House Dictionary of the English Language 517, 541 (2nd ed.1987).

928 A.2d at 1263–1264 (footnote omitted).[8]

With these guiding principles in mind, we conclude that the inaction of City Council in the present case constitutes a final order, decision or determination within the purview of § 1506. Council has decided to block bills that would designate HSP's site for a casino in a CED district and not to approve a Plan of Development. As a result, HSP has not been able to secure the approvals that it must have under the Philadelphia Code in order to develop its site into the licensed facility the Gaming Board approved. Council's refusal to act is no less an action that amounts to a final decision or determination involving the zoning of a licensed facility under § 1506 than the approval or rejection of a plan of development.[9]

It would be an absurd result to conclude that an appeal from a political subdivision's final decision to approve or reject a plan of development may be taken immediately to this Court under § 1506, but that no such appeal may be taken if the political subdivision simply refused to act, thereby halting implementation of the Gaming Board's decision to locate a licensed facility. *See* 1 Pa.C.S. § 1922(1). Indeed, Council's

8. In footnote 5 of the opinion, we noted that 42 Pa.C.S. § 933(a)(2) gives common pleas courts the jurisdiction to hear appeals from final orders of government agencies, except for Commonwealth agencies under Subchapter B of Chapter 7 of Title 2, referred to as the Local Agency Law. Under the Local Agency Law, local administrative actions that constitute adjudications are subject to review in common pleas court. 42 Pa.C.S. § 933(a)(2).

9. The Judicial Code also shows that the General Assembly views the word "determination" as encompassing a refusal to act. In the Judicial Code, the General Assembly has instructed that "inaction" by a government unit is a "determination." 42 Pa.C.S. § 102 (defining "determination" as "[a]ction or inaction by a government unit which action or inaction is subject to judicial review by a court under section 9 of Article V of the Constitution of Pennsylvania or otherwise. The term includes an order entered by a government unit.") "Government unit" is defined under the Judicial Code as "[t]he General Assembly and its officers and agencies, any government agency or any court or other officer or agency of any such political subdivision or local authority." "Government agency" includes "any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." *Id.* This Court's Rules of Appellate Procedure are to the same effect. *See* Pa.R.A.P. 102 (reiterating the definition of "determination" in 42 Pa.C.S. § 102).

interpretation would violate the Statutory Construction Act by requiring us to disregard the General Assembly's express instruction in § 1506 that it aims "to facilitate timely implementation of casino gaming." Accordingly, we conclude that this Court has jurisdiction over HSP's Petition for Review under § 1506.[10]

## II. PETITION FOR REVIEW

■ HSP asserts that since the Gaming Board issued its decision on December 20, 2006 and its Adjudication and Order on February 1, 2007, awarding Category 2 Licenses to HSP and Philadelphia Entertainment & Development Partners, City Council has refused and continues to refuse to implement the Gaming Board's decision by refusing to take the steps the Philadelphia Code requires for the development of its site as a licensed facility.

On January 9, 2007, the casino developers began a series of meetings with the City to establish a plan of development for the two casino sites. On May 22, 2007, the Planning Commission approved HSP's Plan of Development and recommended approval of three bills related to HSP (collectively referred to as the "HSP Bills"). The three critical bills include:

- Bill No. 070456, which would amend current zoning for HSP's Gaming site and zone the property as a CED district (the CED Designation Bill).
- Bill No. 070457, which would authorize the revision of the lines and grades on HSP's site and provide a right of way for sewer maintenance (the Omnibus Bill).

10. In addition to invoking this Court's appellate jurisdiction under Section 1506 of the Gaming Act, HSP requests alternatively that this Court exercise our King's Bench powers or our plenary jurisdiction under 42 Pa.C.S. § 726. HSP asserts that because timely implementation of gaming is a matter of statewide concern, and because the Gaming Board's authority to make and implement its decision is fundamental to the legislative framework of the Gaming Act, the Petition for Review merits this Court's exercise of King's Bench powers or plenary jurisdiction.

Based upon our determination that this Court has jurisdiction over this matter pursuant to 4 Pa.C.S. § 1506, we need not address HSP's request for the exercise of King's Bench powers or plenary jurisdiction.

- Bill No. 070458, which would approve HSP's Plan of Development that had previously been approved by the Planning Commission (the Plan of Development Bill).

On May 24, 2007, the bills were introduced before Council and referred to committee. The District Designation Bill and the Plan of Development Bill were sent to the Rules Committee and the Omnibus Bill was sent to the Committee on Streets and Services. The Committee on Streets and Services did not conduct any hearings on the Omnibus Bill, which remained in committee.

On June 13, 2007, the Rules Committee held a hearing on the District Designation Bill and the Plan Approval Bill, but the bills were not voted upon at that session. The Rules Committee scheduled another meeting for September 26, 2007 to consider the two bills and other gaming-related bills. The meeting was cancelled. No further action has been taken on the three bills.

HSP seeks relief from Council's deliberate actions to delay and obstruct implementation of the Gaming Board's approval of HSP's Category 2 slot machine license application. HSP asserts that Council's efforts are designed to nullify the Gaming Board's siting decision by failing to process the HSP bills. HSP contends that Council has refused to abide by this Court's decision that the Gaming Board has the exclusive authority to select the location of the casino.

The Gaming Board conducted public input hearings in Philadelphia on April 10–12, 2006. At the hearings, a council member testified in favor of the license application of PNK Pinnacle Entertainment (Pinnacle). On December 20, 2006, Pinnacle's application was denied by the Gaming Board. Pinnacle did not file an appeal to this Court from the Gaming Board's Order and Adjudication dated February 1, 2007.[11] HSP asserts that the same council member who testified in

11. Riverwalk Casino was the only unsuccessful applicant to file an appeal from the Gaming Board's approval of HSP and PEDP's applications for Category 2 Slot machine licenses in the City of Philadelphia. *Riverwalk Casino v. Pa. Gaming Control Board,* 926 A.2d 926 (2007).

favor of the Pinnacle site has undertaken efforts to oppose HSP's facility at the site selected by the Gaming Board.

HSP has provided extensive documentation that certain council members have made public statements regarding their efforts to obstruct and derail the Gaming Board's approval of HSP's facility. Council has not denied or refuted any of the documents provided by HSP. Nor has Council disputed the accuracy of the public statements made by those council members in its Motion to Dismiss.

Included among the actions taken by council members to delay the implementation of the Gaming Board's decision to locate the casinos in Philadelphia, as well as the public statements made in opposition to HSP's site, are the following:

- a council member's press release announcing he intended to file an appeal from the Gaming Board's Adjudication, quoting the council member as stating "I think it's a horrible decision. I will do everything I can to delay construction of the facilities until some of these serious concerns are addressed." Exhibit I to Petition for Review;

- a council member's statement at a March 2, 2007 public hearing on Ordinance No. 070112 [12]that "this was dumped on us, and we got to figure out a way in which we can slow this process down." Exhibit L to Petition for Review;

- a council member's announcement at the March 2, 2007 public hearing that he "intended to vote for the bills that [another council member had] put forth in an effort to slow this down or stop this process." Exhibit L to Petition for Review; and

- a council member's sponsorship on April 19, 2007 of Resolution No. 070322 "[a]uthorizing the creation of a Special Committee on Gaming Alternate Site Selection of

12. Bill No. 070112, which was introduced to City Council on February 22, 2007, proposed an ordinance submitting a ballot question to Philadelphia's qualified electors, asking whether the Home Rule Charter should be amended to prohibit Council from taking any action that would permit licensed gaming within 1500 feet of a residentially zoned district, an Institutional Development District, or certain residentially-related uses.

the City Council of Philadelphia, for the purpose of holding hearings and making written recommendations to identify alternate locations for slots parlors in the City...." Exhibit N to Petition for Review.

HSP asserts that the detrimental impact of one council member's actions is demonstrated by his exercise of "the councilmanic prerogative" to impede consideration of the HSP bills. HSP states that "[u]nder a tradition known as 'councilmanic prerogative,' zoning legislation that affects property within any councilmanic district will not be passed by City Council unless the Council member representing that district approves the legislation." HSP contends that since other members of City Council honor the tradition, a council member representing the district where HSP's facility is located is uniquely positioned to block the zoning legislation for the development of the SugarHouse casino.

The use of the councilmanic prerogative to delay the zoning legislation and zoning construction was referred to in a document circulated by a council member:

When the Pennsylvania Gaming Control Board issued gaming licenses to SugarHouse and Foxwoods Casinos, I pledged to my constituents that I would fight their decision with every tool I had available. That's exactly what I've done but the bottom line is that we need the Governor's help.

I introduced several pieces of legislation to block or delay casino construction. Despite two public hearings, those bills have not been voted out of committee.

When Council Member Ramos introduced legislation permitting immediate construction of SugarHouse Casino, I successfully blocked its approval. However, in light of the recent court decisions, I don't know if I can maintain a Council majority to defeat the legislation.

And while I may still have additional options when Council reconvenes in the fall, I sincerely believe that our best hope

of success is with additional support at the highest levels of State Government.

*See* Exhibit P to Petition for Review.

On August 9, 2007, a council member sent a letter to Governor Rendell, stating:

On behalf of the communities I represent, I want to welcome your leadership and to thank you for considering alternate sites for gaming facilities in Philadelphia. In order to provide the State ample time to review this issue, I pledge to you and my constituents that I will make my best effort to hold the necessary legislation that would permit casino construction until you complete a full review of the matter.

The letter identified "potential alternate sites," including the "Anderson site (formerly applied for by Pinnacle)." *See* Exhibit Q to Petition for Review.

The council member further stated that, "I recognize that the sites cannot be altered unless the developers agree to the relocation. However, I am certain with the State's numerous resources and your leadership, appropriate incentives will be determined to convince the developers that a move would be in their best interest." *Id.*

HSP contends that Council has not disputed or denied the following:

(a) HSP has complied with the requirements of Chapter 14–400 of the City Code;

(b) the CED zoning classification is the only classification in the City that permits licensed gaming;

(c) HSP complied with the CED Ordinance and the Planning Commission approved the Plan of Development;

(d) a council member has made public statements indicating that he refused to allow the HSP Bills to proceed because he intended to force HSP to move its site;

(e) City Council follows the "long standing courtesy tradition of councilmanic prerogative" (City Council Motion to Dismiss at 4, n. 2);

(f) a council member's exercise of "councilmanic prerogative" has been used to prevent HSP bills from being processed; and

(g) efforts have been made to compel HSP to move its site (City Council Motion to Dismiss at 6–7).

HSP asserts that Council has not disputed the material facts, but has solely disputed the legal conclusions arising from the undisputed facts. HSP contends that Council has done so by ignoring this Court's decision in *Pennsylvania Gaming Control Board v. City Council*, 928 A.2d 1255, 1270 (Pa.2007), that the Gaming Control Board has exclusive authority to determine the locations of Category 2 slot machine licenses within the City.[13]

## III. DISCUSSION

Pa.R.A.P. 1532(b) states that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant is clear." The Note to Rule 1532 provides in relevant part:

Subdivision (b) authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil procedure regarding judgment on the pleadings and peremptory and summary judgment. However, such relief may be requested before the pleadings are closed where the right of the applicant is clear.

As noted above, Section 14–403 of the CED Ordinance sets forth the procedures for the establishment of a Commercial

13. With respect to Council's assertion that HSP and a council member both requested that the September 24, 2007 Rules Committee Hearing be cancelled, HSP states that a council member on the Rules Committee requested that the hearing be cancelled based on his concern that there was no approved Community Benefits Agreement. *See* Exhibit 2 to HSP's Brief in Opposition. HSP states that this matter is immaterial as Council Committee hearings are neither scheduled nor cancelled by private citizens or companies, but rather by council members and Committee Chairpersons. It is undisputed that no vote has been taken on the HSP bills in any committee of Council.

Entertainment District. Pursuant to Phila. Code § 14–403(1), (2):

(1) Council shall designate, by ordinance, such Commercial Entertainment Districts in such areas as Council deems appropriate. For each such District, such designations shall become effective upon the adoption of an ordinance designating the district boundaries; and the approval of a Plan of Development for the District. Upon the designation becoming effective, the underlying zoning classification for all lots within the District shall be superseded, and no permits shall issue for any use within the District other than as permitted by the approved Plan of Development and this Chapter.

(2) Review and approval of a proposed Plan of Development. The [Planning] Commission shall submit to Council for its consideration a proposed Plan of Development for a Commercial Entertainment District if the Commission finds that the Plan is consistent with the purposes of such a District, is in compliance with the provisions of this Chapter, and is otherwise appropriate in terms of scale, density, accessibility and design for the neighborhood.

The Plan of Development must be submitted initially to the Planning Commission for approval. The Plan of Development must provide comprehensive information on the CED District, including:

(a) the extent, boundaries, and area of the district to include lot area and width dimensions;

(b) the proposed maximum gross floor area;

(c) the dimensions and heights of the proposed structures or existing structures to be retained as well as the use or uses intended for such structure;

(d) the occupied area, gross floor area, and height of all buildings within the district;

(e) the size and location of all parking areas; the size and location of all driveways leading thereto; and the size and location of all other private drives, ways or streets intended to be used by automobile traffic;

(f) the size and location of all off-street loading facilities;

(g) the size and location of any signs;

(h) a landscaping plan;

(i) a transportation management plan that details internal circulation systems, external access points, pedestrian flows, including to and from parking facilities, and estimates of levels of service on sidewalks and internal roads. The plan shall include a traffic and parking study ... assessing the impacts of new traffic;

(j) a parking management plan describing the proposed policy on and resources for parking for patrons, employees, and managers, and anticipated traffic and parking management resources;

(k) any recommendations on intersection improvements, new roadway construction, or widening of existing roadways, if required, and any traffic buffers to protect residential areas, including the manner of funding such improvements by the developer;

(*l*) any other information that the Planning Commission may deem necessary, to include sufficient guarantees in the form of restrictive covenants running with the land or letters of intent to be dedicated for public use.

Phila.Code § 14–403(3).

When the Planning Commission finds that the plan of development is consistent with the purpose of CEDs and complies with the provisions of the CED Chapter, the Planning Commission approves and submits the plan of development to Council for consideration. If the Planning Commission fails to approve, disapprove, or table consideration of a plan within 45 days after submission, the plan may be submitted directly to Council and it will be deemed submitted to Council by the Planning Commission. Phila. Code § 14–403(4).

In this case, the Planning Commission approved HSP's Plan of Development. *See* Petition for Review Exhibit AA (Philadelphia City Planning Commission Minutes, May 22, 2007 at 12).

After a plan of development is approved by the Planning Commission, it is submitted to Council. Under the CED Ordinance, Council then designates by ordinance the site as a Commercial Entertainment District, and reviews and approves a Plan of Development. Phila. Code § 14–403(1). Once the CED designation becomes effective, the underlying zoning classifications for all lots within the district are superseded. *Id.*[14]

14. Under Phila. Code § 14–403(4), Council's approval of a plan of development is presumed

if Council fails to approve by ordinance, disapprove by ordinance, or table consideration of a proposed Plan by the later of (i) 45 days after submission by the Commission of a proposed Plan to the Council or (ii) the fifth Council meeting after submission by the Commission of a proposed Plan to the Council; however, this provision shall not apply to any Plan of Development for a Commercial Entertainment District located within the Fourth Councilmanic District. Upon approval of a plan of development by Council, and the designation of the site as a CED District, the City's Department of Licenses and Inspections is authorized to issue the building and zoning permits required to begin construction of the gaming facility.

Phila. Code § 14–404.

HSP asserts that since the HSP bills were introduced to Council on May 24, 2007, Council has been in session for more than 45 days as of October 25, 2007, and has held meetings on May 31, June 7, June 14, September 20, September 17, and October 4, 2007. HSP argues that, as of October 25, 2007, because Council failed to act on the Plan of Development Bill within 45 days or 5 meetings after its submission, Council was deemed to have approved the Plan of Development.

Council argues that the "deemed approved" provision does not apply because HSP's Plan of Development was not formally submitted to Council and because the CED Designation Bill has not been passed.

HSP responds that neither of these is a precondition to the effectiveness of the "deemed approved" provision. HSP asserts that the clause does not require a "formal" submission, and that it is disingenuous for Council to suggest that the Plan of Development was not submitted to it. HSP states that the Plan of Development was provided to Council Member Juan Ramos and then introduced before Council for approval as a bill, and that Council held a hearing on the Plan of Development on June 13, 2007. HSP notes that at the hearing, the Planning Commission's Executive Director testified about the Plan of Development, presented it to Council, and that Council's Rules Committee amended the Plan of Development Bill to include the Plan of Development as an exhibit. *See* Petition for Review Exhibit Z.

HSP asserts that even assuming, arguendo, that the Plan of Development was not submitted to Council on May 24, it was certainly introduced at the June 13 hearing. HSP states that even using June 13 as the submission date, the "deemed approved" provision has been trig-

This Court's decision in *Pennsylvanians Against Gambling Expansion Fund v. Commonwealth (PAGE)*, 583 Pa. 275, 877 A.2d 383 (2005), addressed the constitutionality of the former version of 4 Pa.C.S. § 1506, which expressly preempted local land use and zoning ordinances "as [to the] conduct of gaming ... including the physical location of any licensed facility ... to the extent that the licensed facility [had] been approved by the Board." We determined that the former version of § 1506 did not provide adequate standards upon which the Gaming Board could rely in considering the local and land use provisions for the site of the facility itself.

In *Pennsylvania Gaming Control Board v. City Council*, 928 A.2d 1255 (Pa.2007), we noted that following *PAGE*, the General Assembly reenacted Section 1506. We stated:

[U]nder the Gaming Act, the General Assembly obligates the Board to locate licensed facilities in the first class cities and intends for the Board to make that decision alone. 4 Pa.C.S. §§ 1304(b)(1), 1307. After the Board's decision on location is made, the General Assembly intends for it to be implemented under and according to the zoning and land use provisions a city has enacted. Should the Board's decision on location be challenged, the General Assembly intends that any review of the final order, determination or decision a city makes in this regard take[s] place in this

gered because 45 days have passed and Council held seven hearings since that day.

The City states that "the City Solicitor has opined that the Plan of Development has not been 'deemed approved' by City Council under the 45–day period in Section 14–403(4) of the Zoning Code because that provision applies only after a CED has been created. That opinion, of course, in no way limits the power of this Court to grant the relief the City does not oppose on other grounds." Brief of Respondents City of Philadelphia and the Philadelphia City Planning Commission at footnote 2.

HSP and Council agree that the "deemed approved" provision by its terms only applies to the Plan of Development. HSP argues that the CED Designation Bill should be declared duly enacted because HSP has admittedly met the CED Ordinance criteria and Council has no discretion to refuse to zone the Gaming Board's approved site.

We need not address the issue of whether the Plan of Development has been deemed approved under Phila. Code § 14–404(3), however, based upon our determination that Council's inaction warrants the relief requested by the City and HSP.

Court. 4 Pa.C.S. § 1506. Under the Act, the General Assembly does not intend for the electorate of a first class city to be given the opportunity to consider, approve, disapprove, nullify or otherwise affect the Board's decision once it is made or to prevent its implementation. 4 Pa.C.S. §§ 1304, 1307, 1506.

928 A.2d at 1269.

The comprehensive information required to be submitted to the City of Philadelphia's Planning Commission by the CED Ordinance demonstrates the rigorous demands of local zoning provisions with respect to the development of gaming sites. After the Planning Commission approved HSP's Plan of Development and the Plan was submitted to City Council for its consideration, neither *PAGE* nor the Philadelphia Code permitted City Council to refuse consideration of the submission for the purpose of delaying and obstructing implementation of the Gaming Board's Adjudication and Order regarding the situs of the gaming facility.

A political subdivision has no power to override the statutory provisions of the Gaming Act regarding the situs of a licensed gaming facility or to use its authority to zone to impede implementation of the Gaming Board's decision in that regard. A member of City Council does not have the authority to use local zoning processes to overturn the Gaming Control Board's approval of an applicant's Category 2 slot machine license. The *PAGE* decision was never intended to permit council members in the City of Philadelphia to pressure successful applicants with promises or enticements of expeditious zoning approvals should they relocate their facilities to another site, especially when a suggested alternate site was originally rejected by the Gaming Control Board.

As recognized by the City of Philadelphia, the City ultimately has no discretion to preclude gaming. We conclude that the undisputed documentation establishes the deliberate inaction by Council for the purposes of delay. This deliberate inaction occurred after the submission of HSP's Plan of Development that was approved by the Planning Commission. Un-

der these circumstances, we find the following relief requested by the City to be appropriate: [15]

(1) that the site approved by the Gaming Board for the SugarHouse Casino is declared zoned as a Commercial Entertainment District pursuant to the Philadelphia Code Chapter 14–400 as in existence on November 1, 2007;

(2) pursuant to Chapter 14–400, HSP's Plan of Development as approved on May 22, 2007 by the Planning Commission, including all provisos thereto, is declared to be finally approved and shall require no further approval as if the City Council of Philadelphia had approved the same;

(3) that all revisions, relocations, strikes and vacations of easements and public rights of way identified in the Plan of Development as approved by the City Planning Commission are authorized;

(4) that the City of Philadelphia is directed to take all actions necessary to implement the relief granted, including making all necessary changes to City records, maps and plans, and receiving, reviewing and acting upon all applications from HSP in the ordinary course and in compliance with this Court's order; and

**15.** Amicus Curiae has asserted that HSP cannot obtain control of or a property interest in the river bed of the Delaware River without state legislative authorization to the Pennsylvania Department of General Services for the conveyance of the river bed lease, and that HSP has not acquired such authorization from the General Assembly.

In its Brief in Opposition to the Consolidated Motion to Dismiss, HSP concedes that it needs riparian rights before it can begin building as contemplated by its Plan of Development, but asserts that the effective designation under the CED ordinance and the riparian rights are parallel prerequisites to HSP obtaining the permits it needs to begin construction. HSP states that the CED ordinance is silent with respect to riparian rights and provides no requirement regarding obtaining the right to construct its casino on riparian land. *See* HSP Brief in Opposition at 19.

We need not address the issue of riparian rights at this stage of the proceedings as HSP did not raise that issue in its Petition for Review. The resolution of the issue as to whom may have the authority to grant riparian rights must be left for another day.

534

(5) the City Planning Commission for the City of Philadelphia is stricken as a party to the action.

Jurisdiction is retained.

Justice SAYLOR files a dissenting statement.

Justice SAYLOR, dissenting.

I do not believe that relief should be granted at the threshold stage of this case. In the first instance, I have substantial questions about this Court's jurisdiction to do so in this developing area of the law. Moreover, the pleadings have been filed directly in this Court, and there has been no lower court decision or, indeed, any fact-finding at all. There is therefore no record on which to determine the merits of Petitioner's claims. Accordingly, even if this Court has jurisdiction in such circumstances, I believe it would be more appropriate to appoint a special master as Petitioner requests, *see* Petition for Review of HSP Gaming LP at 49, to hold any necessary hearings and report back to this Court in an expeditious manner. In this way, the underlying, dispositive facts can be ascertained on a developed record. More generally, to the extent that the Court is, in the fourth item of the Order, presently granting the mandamus relief requested by Petitioner, *see id.* at 48, I would simply note that, pursuant to recent precedent, it appears that we lack jurisdiction to entertain a request for such relief. *See Philadelphia Entertainment and Development Partners v. City of Phila.*, 594 Pa. 468, 937 A.2d 385 (2007).