939 A.2d 290

**PHILADELPHIA ENTERTAINMENT AND DEVELOPMENT PARTNERS, L.P. d/b/a/ Foxwoods Casino Philadelphia, Petitioner**

**v.**

**CITY OF PHILADELPHIA and Department of Licenses and Inspections of City of Philadelphia, Respondents.**

Supreme Court of Pennsylvania.

Submitted Oct. 16, 2007.

Decided Dec. 27, 2007.

Michael Kenneth Coran, Glenn Aaron Weiner, Joseph Paul Bradica, Klehr, Harrison, Harvey, Branzburg & Ellers, L.L.P., Philadelphia; Eric G. Fikry, Stephen David Schrier, Obermayer Rebmann Maxwell & Hippel, L.L.P., Cherry Hill, NJ, William G. Shwartz, Jeffrey Brent Rotwitt, Obermayer Rebmann Maxwell & Hippel, L.L.P., Philadelphia, for Philadelphia Entertainment and Development Partners, L.P. d/b/a/ Foxwoods Casino Philadelphia, petitioner.

Mark R. Zecca, Romulo, Liberio Diaz, City of Philadelphia Law Dept., for City of Philadelphia and Dept. of Licenses and Inspections of City of Philadelphia, respondents.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Chief Justice CAPPY.

Invoking jurisdiction under § 1506 of the Pennsylvania Race Horse Development and Gaming Act ("Gaming Act" or "Act"), 4 Pa.C.S. § 1101 *et seq.*, Petitioner Philadelphia Entertainment and Development Partners ("PEDP") filed an Emer-

gency Petition for Review of the Department of Licenses and Inspections of City of Philadelphia's Decision Denying Application No. 84960 for C–3 Commercial Zoning and Use Registration Permit ("Petition") against the City of Philadelphia ("Philadelphia" or "City") and the Department of Licenses and Inspections of City of Philadelphia ("Department").[1] For the following reasons, we conclude that this Court does not have jurisdiction over the Petition under § 1506. Accordingly, the instant appeal is quashed.

The following material facts as set forth in the Petition and the City's Brief are undisputed. In July of 2004, the General Assembly enacted the Gaming Act, a statute that provides for slot machine gaming at a set number of licensed facilities within the Commonwealth. 4 Pa.C.S. § 1102. The Act established the Pennsylvania Gaming Control Board ("Gaming Board"), and empowers it to issue slot machine licenses at its discretion. 4 Pa.C.S. § 1202(b)(12). The Act provides for three types of slot machine licenses, designated by category. 4 Pa.C.S. § 1301. Each category permits an entity or person to apply to the Board for a license, and upon issuance, authorizes the placement and operation of slot machines at a licensed facility. *Id.* Under the Act, two Category 2 licensed facilities are to be located by the Board within a city of the first class. 4 Pa.C.S. § 1304(b). Philadelphia is a city of the first class, the only such city in the Commonwealth.

PEDP is a limited partnership. On December 28, 2005, PEDP applied to the Gaming Board for a Category 2 slot machine license in Philadelphia. In its application, PEDP proposed to develop a licensed facility on property it owns in the City. On December 20, 2006, the Gaming Board approved a Category 2 license in Philadelphia for PEDP. As part of this

1. The City states that the Department should not be named separately as a Respondent and should be stricken as a party because City agencies must be sued only in the name of the City. *See* 53 P.S. § 16257; *City of Philadelphia v. Glim,* 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (1992) ("[A]ll suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence.") For this reason, the Department shall be stricken as a party to this matter.

decision, the Board approved the location of the licensed facility that PEDP proposed. This Court affirmed the Gaming Board's Adjudication and Order approving PEDP's application for the license. *Riverwalk Casino, LP v. Pennsylvania Gaming Control Bd.*, 592 Pa. 505, 926 A.2d 926 (2007).

In anticipation of approvals of slot machine licenses by the Gaming Board, the City enacted Ordinance No. 051028–AA in March of 2006, adding Chapter 14–400 to the provisions of the Philadelphia Code that govern zoning and planning. The Ordinance created a new zoning classification referred to as Commercial Entertainment Districts (CEDs). The CED Ordinance is intended to encourage the orderly development of major entertainment facilities, like gaming casinos, in Philadelphia, without limiting the right of the Gaming Board to identify the property on which licensed facilities will be located within the City. *See* Phila. Code §§ 14–401(1), 14–405(2),(3).[2]

On January 23, 2007, PEDP filed an application with the Department for a zoning and use registration permit for its property. PEDP's permit application was not made under the framework set forth in the CED Ordinance. Rather, PEDP's application was premised on the property's designation for C–3 Commercial zoning, and sought a permit for "[c]onstruction of a new hotel with accessory conference/meeting facilities, and accessory garage, theater, restaurants (no take out), amusement arcade within LCB licensed areas, retail, offices and storage as allowed in C–3 Commercial." (Exhibits to

**2.** The CED Ordinance sets forth a multi-step process for the development of facilities. The developer of a property submits a plan of development to Philadelphia's Planning Commission, which is reviewed for compliance with the regulations set forth in Chapter 14–400. The plan is also submitted for approval to City Council for the City of Philadelphia. City Council reviews the plan and upon approval, designates a CED by ordinance in appropriate areas of Philadelphia. Upon CED designation, all underlying zoning classifications on a piece of property are superseded. The developer submits a permit application to the Planning Commission. The Planning Commission reviews the application for compliance with the approved plan of development. Once the Planning Commission confirms compliance, the Department is authorized to issue the necessary permits for the CED. *See* Phila. Code § 14–403.

Petition at J).[3] On June 8, 2007, PEDP submitted an amended application seeking the permit for, *inter alia,* an "amusement arcade within state licensed areas regulated either by the Pennsylvania Liquor Control Board or the Pennsylvania Gaming Control Board including areas authorized for the conduct of gaming ... as allowed in C–3 Commercial." (Exhibits to Petition at C).

On August 17, 2007, the Department denied PEDP the permit, issuing a Notice of Refusal on PEDP's permit application. The Department based the Notice of Refusal on a provision in the Philadelphia Code concerning the location of regulated uses, such as amusement arcades. *See* Phila. Code, § 1605–(4). In the Notice of Refusal, the Department stated that "[t]his proposed use, an amusement arcade, is a regulated use and is located within 1,000 feet of another regulated use (check cashing agency). It is prohibited within 1,000 feet of another regulated use in this zoning district." (Exhibits to Petition at C).

On September 4, 2007, PEDP filed the instant Petition, and asks this Court to review the Department's decision to deny it the permit sought.[4] PEDP alleges that the Department's decision violates both the Gaming Act and the Philadelphia Code, and that it is legally entitled to the permit. PEDP requests an order from this Court, reversing the Department's decision and directing that the permit be issued to it. PEDP invokes this Court's jurisdiction under 4 Pa.C.S. § 1506 of the Gaming Act.

■ The City contends that this Court lacks jurisdiction under § 1506 to consider PEDP's Petition. We address this threshold issue first.

Section 1506 states:

§ 1506. Licensed facility zoning and land use appeals

3. PEDP is separately pursuing the process established in the CED Ordinance. *See supra* n. 2. This pursuit has no relevance here.

4. By order dated October 16, 2007, this Court ordered that this matter be submitted on briefs on an expedited basis.

In order to facilitate timely implementation of casino gaming as provided in this part, notwithstanding 42 Pa.C.S. § 933(a)(2) (relating to appeals from government agencies), the Supreme Court of Pennsylvania is vested with exclusive appellate jurisdiction to consider appeals of *a final order, determination or decision* of a political subdivision or local instrumentality involving zoning, usage, layout, construction or occupancy, including location, size, bulk and use of a licensed facility. The court, as appropriate, may appoint a master to hear an appeal under this section.

4 Pa.C.S. § 1506 (emphasis added).

The City begins its argument by pointing out that § 1506 gives this Court jurisdiction to consider its "final" orders, determinations or decisions on zoning matters relating to licensed facilities. 4 Pa.C.S. § 1506. According to the City, until the administrative process set forth in the Philadelphia Code for such a matter is exhausted, a permit denial is not final. The City contends that since under the Philadelphia Code, the Department's decision to deny PEDP the permit is subject to review by the Philadelphia Zoning Hearing Board of Adjustment ("Zoning Hearing Board"), the Department's decision is neither final nor reviewable under § 1506.[5] PEDP counters that the Department's denial of the permit application is reviewable under § 1506 because nothing further is required of the City for the Department's decision to take effect.

Whether § 1506 gives this Court jurisdiction to review the Department's decision is a matter of statutory construction. Therefore, the Statutory Construction Act of 1972 controls. 1 Pa.C.S. § 1501 *et seq.* Under the Statutory Construction Act, it is fundamental that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,] and that [e]very statute shall be construed, if possible, to give effect to all its provi-

**5.** The parties inform us that PEDP appealed the Department's decision to the Zoning Hearing Board. The City informs us that a hearing on PEDP's appeal was originally scheduled before the Zoning Hearing Board for October 3, 2007, was continued at PEDP's request, and is now scheduled for February 6, 2008.

sions." 1 Pa.C.S. § 1921(a). In this regard, the Statutory Construction Act instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than the statutory language. 1 Pa.C.S. § 1921(c). These matters include the occasion and necessity of the statute, the object to be attained, the former law, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(1),(4),(5),(6). Finally, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a).

We begin our analysis under these guiding principles by observing that the words in § 1506's jurisdictional grant, which refer to appeals from an "order," a "determination" or a "decision" of a political subdivision or local instrumentality regarding, *inter alia,* the zoning, use, or construction of a licensed facility, plainly authorize this Court to review what a political subdivision decides to do on zoning issues that arise out of the development of a site for licensed gaming. 4 Pa.C.S. § 1506. *See Pennsylvania Gaming Control Board v. City Council of Philadelphia ("PGCB v. City Council"),* 928 A.2d 1255, 1264 (Pa.2007) (concluding that an ordinance concerning the location of licensed facilities claimed invalid under the Gaming Act was reviewable under § 1506, *i.e.,* it was a final order, decision or determination of a political subdivision involving the location of a licensed facility, given the words in § 1506, as defined by common usage, and their plain meaning; the General Assembly's express instruction in the statute to interpret the statute to facilitate the timely implementation of gaming; and the Act's other jurisdictional provisions to this Court). That said, we also observe that § 1506 does not authorize this Court to review every such order, determination or decision. Rather, § 1506 expressly provides that only those orders or determinations or decisions that are "final" are appealable. 4 Pa.C.S. § 1506. Yet, the Gaming Act does

not define "final," and because of the term's alternative conno-
tations, what amounts to an order, determination or decision
that is "final" under § 1506 is less than clear in this context.[6]
It may be, as PEDP argues, the last word from any local body
involved in effectuating Philadelphia's zoning ordinances or it
may be, as the City argues, that ultimate pronouncement
made in accordance with and deemed conclusive and appeal-
able under the administrative process the Philadelphia Code
provides.

Insofar as § 1506 is not free from ambiguity in this regard,
we consult factors the Statutory Construction Act lists as
sources of legislative intent when a statute's words are not
explicit. 1 Pa.C.S. § 1921(c)(1),(4),(5),(6). For this, our recent
decision in *PGCB v. City Council* is instructive. In *PGCB v.
City Council*, we were called upon to consider the General
Assembly's objectives in re-enacting § 1506 after its predeces-
sor, which expressly preempted local zoning regulations relat-
ing to the physical location of licensed facilities approved by
the Gaming Board, was declared an unconstitutional delega-
tion of legislative power by this Court and severed from the
Act. *See Pennsylvanians Against Gambling Expansion
Fund v. Commonwealth of Pennsylvania* ("PAGE"), 583 Pa.
275, 877 A.2d 383 (2005) (concluding that former § 1506 was
unconstitutional under Article II, Section 1 of the Pennsylva-
nia Constitution because the statute did not provide the
Gaming Board with definite standards, policies and limitations
to guide its decision-making with regard to zoning issues).
More specifically, in *PGCB v. City Council*, we looked to
§ 1506 as re-enacted to determine what role the General
Assembly intends for local zoning provisions to play in the
establishment of licensed facilities, in light of the exclusive
authority it has given to the Gaming Board to locate such

6. Among the several definitions the dictionary gives for "final" are:
"pertaining to or coming at the end; last in place, order or time";
"ultimate;" "conclusive or decisive;" "constituting the end or purpose";
"precluding further controversy on the questions passed upon"; "deter-
mining all issues presented, so that no further decision upon the merits
of the issues is necessary"; "that which is last; that which forms an
end or termination." The Random House Dictionary of the English
Language, 719 (2nd ed. 1987).

facilities. Because the General Assembly declined to express-
ly preempt local land use and zoning ordinances in re-enacted
§ 1506, as it had in the original statute, and included nothing
more in re-enacted § 1506 than a jurisdictional grant, we
determined that it was the General Assembly's aim in re-
enacted § 1506 to maintain a political subdivision's power to
zone and to have licensed facilities established in accordance
with the land use and zoning provisions it has enacted. *PGCB
v. City Council*, 928 A.2d at 1267–70.

█ Thus, presently, we conclude that the order, decision
or determination that is "final" and therefore, subject to this
Court's review under § 1506, is an order, decision or determi-
nation on a zoning issue involving a licensed facility that is
conclusive and appealable under a political subdivision's zoning
provisions. In our view, this construction of § 1506 is consis-
tent with and advances the General Assembly's intent in the
Gaming Act to preserve a political subdivision's authority to
zone and subject the development of licensed facilities to local
zoning regulations. *See id.*[7]

Turning to the Philadelphia Code so as to discern for
purposes of § 1506 whether the subject of PEDP's Petition,
*i.e.*, the Department's Notice of Refusal, is final under the
City's zoning provisions, we see that relevant sections of the
Philadelphia Code provide for a two-step permitting process.
The first step is the decision the Department makes on a
permit application. Under the Philadelphia Code, the Depart-
ment accepts applications for a zoning or use registration

7. At the same time, however, we observe that the General Assembly's
intent in § 1506 to preserve a city's authority to zone does not mean
that local zoning laws may be used to impede implementation of the
Gaming Board's decision to locate a licensed facility by those author-
ized to effectuate those local laws. Recently, in *HSP Gaming L.P. v.
City Council for the City of Philadelphia*, 595 Pa. 508, 939 A.2d 273,
2007 WL 4226871 (per curiam) (2007), we concluded that § 1506 gave
this Court the jurisdiction to consider the refusal of Philadelphia's City
Council to proceed with certain steps required under the CED Ordi-
nance for the development of gaming facilities. *See supra* n. 2. City
Council's decision not to proceed had prevented the licensee who was
granted the second Category 2 slot machine license in Philadelphia
from securing the CED designation it must have under the Philadelphia
Code to develop its approved site into a licensed facility.

permit, and may grant the permit sought, refer applications to the Zoning Hearing Board for a certificate for regulated uses, or issue notices of refusal. Phila. Code § 14–1702, 14–1703. The second step is the decision the Zoning Hearing Board renders on the propriety of the Department's decision. Under the Philadelphia Code, if requested, the Zoning Hearing Board reviews the Department's decision, and may affirm, reverse, or modify it, issue the permit, grant a special exception or a variance, or issue a certificate for regulated uses. Phila. Code, §§ 14–1705, 14–1801, 14–1802, 14–1804, 14–1605(4). Further, under the Philadelphia Code, the decisions the Zoning Hearing Board issues are designated as appealable to the court of common pleas. Phila. Code § 14–1807.[8]

In light of these provisions, it is evident that the Department's Notice of Refusal of PEDP's permit application is not conclusive and appealable under Philadelphia's zoning ordinances. This is because the Philadelphia Code provides for yet another step in the permit application process, a review by and decision from the Zoning Hearing Board on the Department's denial of the permit. Therefore, we conclude that the Department's Notice of Refusal is not a "final order, determination or decision of a political subdivision or local instrumentality involving zoning of a licensed facility" within the meaning of § 1506. Accordingly, we hold that this Court does not have jurisdiction over PEDP's Petition under § 1506.

For these reasons, this appeal is quashed.

Justices CASTILLE, EAKIN, BAER, BALDWIN and FITZGERALD join the opinion.

Justice SAYLOR concurs in the results.

---

8. Generally, the General Assembly has given the court of common pleas the jurisdiction to hear statutory appeals of local zoning decisions. *See* 42 Pa.C.S. § 933.